IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
|     Plaintiff/Respondent, | § | |
| V. | § | Cr. No. C-98-244 |
| | § | C.A. No. C-06-453 |
| SILBERT BOYD, | § | |
| | § | |
|     Defendant/Movant. | § | |

**ORDER DENYING PETITION FOR WRIT OF ERROR *CORAM NOBIS***

On October 2, 2006, Defendant Silbert Boyd ("Boyd") filed in his criminal case a "Petition for Error *Coram Nobis*, 28 U.S.C. § 1651." (D.E. 91).[1] The petition has also been assigned a civil case number. For the reasons set forth below, his petition is DENIED.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to the All Writs Act, 28 U.S.C. § 1651.

**II. CRIMINAL PROCEEDINGS**

Boyd and his co-defendant, Kevin Clayton, were charged on July 28, 1998 with aiding, abetting, and assisting one another to knowingly and intentionally possess with intent to distribute approximately 540 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. § 2. (D.E. 1). Boyd pleaded not guilty and proceeded to trial. A jury found Boyd guilty on October 5, 1998. (D.E. 40, 45). On December 14, 1998, the Court sentenced Boyd to 90 months in the custody of the Bureau of Prisons, to be followed by a five-year term of supervised release. The Court also imposed a $100 fine and $100 special assessment. (D.E. 53, 57).

---

[1] Docket entry references are to the criminal case.

Boyd timely appealed. (D.E. 54). The Fifth Circuit affirmed this Court's judgment in an unpublished decision issued January 3, 2000. United States v. Boyd, 207 F.3d 657 (5th Cir. 2000) (unpublished).

Boyd subsequently timely filed a pro se motion under 28 U.S.C. § 2255. (D.E. 80). In it, he claimed that he received ineffective assistance of counsel because his counsel failed to inform Boyd of his right to testify and that it was his decision as to whether or not to testify, not his attorney's. (See D.E. 83 at 2-3, 5). He also claimed that his supervised release term was unconstitutional in light of Apprendi v. New Jersey, 530 U.S. 466 (2000). (See D.E. 83 at 3, 11). After ordering and receiving a government response, this Court denied his motion by order entered June 13, 2001. (D.E. 83). The Court also denied Boyd a Certificate of Appealability ("COA"). (D.E. 83 at 13-15; D.E. 88). Boyd appealed the denial of his § 2255 motion, and on June 4, 2002, the Fifth Circuit also denied him a COA. (D.E. 85, 89).

Records from the Bureau of Prisons website reflect that Boyd was released from custody on January 14, 2005. See "Inmate Locator" function at www.bop.gov. In his *coram nobis* petition, Boyd avers that he has been released from BOP custody and is now in the custody of the Immigration and Naturalization Service, facing deportation proceedings. (D.E. 91 at 1).[2]

### III. PETITIONER'S ALLEGATIONS

In his petition, Boyd raises a number of issues. Underlying them all is his allegation that he is innocent of the charges for which he was convicted. He also claims that he was incompetent during trial because of the anxiety medication that was given to him by prison authorities. (D.E. 91 at 2, 3).

---

[2] Boyd's petition claims that he is a native of Jamaica. He further states, however, that he "was naturalized during my service with the United States Marines Corps, with an Honorable Discharge. The Marines lost my Naturalization Record and I am in Immigration & Naturalization (ICE) detention now." (D.E. 91 at 1).

Second, he claims, in conclusory fashion, that his lawyer did not visit or consult with him before his trial date, and that his lawyer "did no investigation." (Id. at 2). Third, he states that he did not pay his attorney to appeal, but that someone else must have paid the attorney because he was not a public defender. He does not claim to know who paid him; instead, he asks who paid his attorney and "for what was he paid?" Fourth, he claims that, after his criminal proceedings had concluded, his attorney failed to communicate with him. For example, he alleges that he wrote to his attorney several times requesting a copy of his trial transcript, but never received a response. He also states that after he was released from prison, he called his attorney's office and was told the attorney was now a judge. In his petition, Boyd asks "Is that a coincidence?"

Boyd also claims that the prosecutor "stepped out of his boundaries." (D.E. 91 at 3). In support of this claim, he alleges that the prosecutor sent him to prison without knowing the facts and without investigating. He claims that "the only thing that matters to [the prosecutor] is winning, even if he has to lie." (Id.). He also claims that, after his trial, he found out that the prosecutor had coerced his co-defendant to make negative statements about him. (Id. at 4).

Next, he claims that his rights were violated during jury selection because he was ultimately found guilty. He claims that he did not have a fair cross-section of jurors because there were not enough blacks in his jury pool. He further contends that he raised this complaint to this Court after trial, but did not receive a satisfactory answer.

Finally, he claims that this Court's "conduct became totally un-just." [sic]. He points to a statement he alleges was made on the record by this Court during sentencing, i.e., "It is a shame how Mr. Boyd hired that young man to work for him and claims that he was just a passenger." (Id. at 4).

3

He claims that this Court "knows nothing about me because no one did any investigation" and thus that his due process rights were violated. (Id.).

He asks that his conviction and sentence be vacated, and asks for a new trial.

## IV.  DISCUSSION

As a preliminary matter, the Court notes that a petition for writ of *coram nobis* is the proper vehicle for Boyd to assert the claims he now raises.  Although they are claims that would typically be asserted in a § 2255 motion, Boyd may not file such a motion before this Court because he is no longer "in custody" pursuant to a conviction in this Court.  United States v. Esogbue, 357 F.3d 532, 534 (5th Cir. 2004).  Thus, Boyd's motion is properly analyzed as requesting a writ of *coram nobis*. Nonetheless, the Court does not reach the merits of Boyd's claims, because he has not even explained, let alone proved, why he neglected to present his claims in a timely section 2255 motion.

"The writ of *coram nobis* is an extraordinary remedy available to a petitioner no longer in custody who seeks to vacate his criminal conviction."  United States v. Hatten, 167 F.3d 884, 887 n.6 (5th Cir. 1999) (citation omitted).  It is available only in circumstances where "the petitioner can demonstrate that he is suffering civil disabilities as a consequence of the criminal conviction[ ] and that the challenged error is of sufficient magnitude to justify the extraordinary relief."  United States v. Castro, 26 F.3d 557, 559 (5th Cir. 1994) (internal citations omitted).  The Supreme Court has emphasized the rarity with which *coram nobis* will issue, stating that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate."  Carlisle v. United States, 517 U.S. 416, 429 (1996) (quoting United States v. Smith, 331 U.S. 469, 475 n.4 (1947)).

Significantly, *coram nobis* is not intended to supplant other avenues of post-conviction relief. Rather, the All Writs Act is a "residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." Carlisle, 517 U.S. at 430 (citing Pennsylvania Bureau of Correction v. United States Marshals Service, 474 U.S. 34, 43 (1985)). Moreover, a writ of *coram nobis* "will issue only when no other remedy is available and when 'sound reasons exist[] for failure to seek appropriate earlier relief.'" United States v. Dyer, 136 F.3d 417, 422 (5th Cir. 1998) (quoting United States v. Morgan, 346 U.S. 502, 512, 74 S. Ct. 247, 253 (1954)); see also Esogbue, 357 F.3d at 535 (quoting same passage from Dyer). In this case, then, Boyd can establish his entitlement to the writ only by providing "sound reasons" for his failure to seek permission to assert the claims alleged in his *coram nobis* petition in a timely petition under 28 U.S.C. § 2255 while still in custody. See Dyer, 136 F.3d at 422.

On that issue, the Fifth Circuit has noted that

> An assertion that he would have been unable to satisfy the stringent standards for filing a successive § 2255 motion while he was in custody is not a "sound reason." See Godoski v. United States, 304 F.3d 761, 763 (7th Cir. 2002) ("*coram nobis* is a common-law writ, and it is entirely inappropriate for the judiciary to invoke the common law to override limitations enacted by Congress, such as the period of limitations in § 2255"), cert. denied, 537 U.S. 1211 (2003) . . . Here, for example, if [Petitioner's assertions amount to hardly more than . . . claims that he reasonably could have raised in [a] §2255 petition, it cannot be said that he has made the necessary showing of a "complete miscarriage of justice."

Esogbue, 357 F.3d at 535.

As discussed in more detail below, while this Court has jurisdiction to consider his petition, Boyd is not entitled to *coram nobis* relief under the foregoing stringent standards.

5

Boyd meets several of the threshold requirements for this Court to consider his petition. First, he has brought his petition in the court of conviction and he is no longer in custody as a result of the conviction he challenges. Second, he has at least alleged that he is suffering a continuing "civil disability." Specifically, he contends that he faces possible deportation as a result of his conviction in this case. If true, that is sufficient to establish that the court has jurisdiction over his petition. Esogbue, 357 F.3d at 534 ("Because Esogbue filed his petition in the court of his conviction, faces the collateral consequence of possible deportation, and is no longer serving his sentence for his federal conviction, the district court's dismissal for lack of jurisdiction was error.").

Thus, the Court must address whether he has shown that "sound reasons" exist for his failure to seek earlier relief, and whether he has shown that the failure to grant his petition would result in a complete miscarriage of justice. Esogbue, 357 F.3d at 535. Boyd has not made such a showing here. All of his claims are ones that reasonably could have been raised in his initial § 2255 motion. Indeed, nothing about his allegations suggests that the facts underlying them could not have been discovered earlier, or were not discovered earlier. In such a case, "it cannot be said that he has made the necessary showing of a "complete miscarriage of justice." See Esogbue, 357 F.3d at 535. Boyd has not even offered an explanation as to why he failed to seek relief on these claims in his § 2255 motion.

Additionally, Boyd was released from BOP custody in January 2005 and could have filed his writ then. Instead, he waited almost two years – until October 2006 – to file his petition. This shows that he failed to exercise "reasonable diligence" in seeking prompt relief. See Dyer, 136 F.3d at 427-28. He has not provided any reason for his delay in seeking relief since his release, either, and this provides yet another reason why his petition should be denied.


Boyd meets several of the threshold requirements for this Court to consider his petition. First, he has brought his petition in the court of conviction and he is no longer in custody as a result of the conviction he challenges. Second, he has at least alleged that he is suffering a continuing "civil disability." Specifically, he contends that he faces possible deportation as a result of his conviction in this case. If true, that is sufficient to establish that the court has jurisdiction over his petition. Esogbue, 357 F.3d at 534 ("Because Esogbue filed his petition in the court of his conviction, faces the collateral consequence of possible deportation, and is no longer serving his sentence for his federal conviction, the district court's dismissal for lack of jurisdiction was error.").

Thus, the Court must address whether he has shown that "sound reasons" exist for his failure to seek earlier relief, and whether he has shown that the failure to grant his petition would result in a complete miscarriage of justice. Esogbue, 357 F.3d at 535. Boyd has not made such a showing here. All of his claims are ones that reasonably could have been raised in his initial § 2255 motion. Indeed, nothing about his allegations suggests that the facts underlying them could not have been discovered earlier, or were not discovered earlier. In such a case, "it cannot be said that he has made the necessary showing of a "complete miscarriage of justice." See Esogbue, 357 F.3d at 535. Boyd has not even offered an explanation as to why he failed to seek relief on these claims in his § 2255 motion.

Additionally, Boyd was released from BOP custody in January 2005 and could have filed his writ then. Instead, he waited almost two years – until October 2006 – to file his petition. This shows that he failed to exercise "reasonable diligence" in seeking prompt relief. See Dyer, 136 F.3d at 427-28. He has not provided any reason for his delay in seeking relief since his release, either, and this provides yet another reason why his petition should be denied.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Boyd' petition for writ of error *coram nobis* (D.E. 91) is DENIED.

Ordered this 23rd day of October, 2006.

_____
Janis Graham Jack
United States District Judge